LYNDALL BLACK KELLEY v. DANIEL EARL KELLEY.

(*August* 8, 1946.)

SPEAKMAN, J., sitting.

*Thomas Herlihy, Jr.,* for petitioner.

*J. Donald Craven* for defendant.

Superior Court for New Castle County, No. 189, May Term, 1946.

Speakman, J., delivering the opinion of the Court:

Our Divorce Act provides by Section 3498 of the Revised Code of 1935:

"The causes for divorce from the bonds of matrimony shall be * * * (e) wilful desertion for two years."

Said Section 3505 of the said Revised Code provides:

"For purposes of divorce * * * jurisdiction may be acquired by personal service upon the defendant within this State, under the following conditions:

"(a) When, at the time the cause of action arose, either party was a bona fide resident of this State, and has continued so to be down to the time of the commencement of the action; except that no action for absolute divorce shall be commenced for any cause other than adultery or bigamy, unless one of the parties has been for the two years

next preceding the commencement of the action a bona fide resident of this State.

"(b) When, since the cause of action arose, either party has become, and for at least two years preceding the commencement of the action has continued to be, a bona fide resident of this State: Provided that the cause of action alleged was recognized in the jurisdiction in which such party resided at the time the cause of action arose, as a ground for the same relief asked for in the action in this State."

The Uniform Annulment of Marriage and Divorce Act has been adopted in Delaware, New Jersey and Wisconsin. The above quoted section (3505) of our Act, is contained in identical language in the New Jersey law. In the case of *Stephenson v. Stephenson*, 102 *N.J.Eq.* 50, 139 *A.* 721, 723, the Court of Errors and Appeals of that State had occasion to interpret the meaning of the section in their law. There the Court said:

"A careful and meditative reading of subdivision (a) makes it plain that the Legislature in using the term, viz. 'When, at the time the cause of action arose, either party was a bona fide resident of this state,' etc., clearly refers to the time the *act of desertion* took place, and not to a time when such desertion became a cause of action for divorce, for the subdivision in continuing, provides, that one of the parties must be a bona fide resident of the state at and from the time of desertion for two years next preceding the commencement of the action, and during which period of time such desertion must be willful, continuous, and obstinate, and, when all these elements are present, then only shall a cause of action accrue to the injured party.

"It is equally plain that subdivision (b), in the use of the language, viz. 'When, since the cause of action arose,

either party *has become* \* \* \* a bona fide resident of this state,' and in the proviso of this subdivision uses the words, 'cause of action alleged,' refers to a complete cause of action for divorce for desertion recognized in this state as such. It is obvious that the phrase, 'cause of action alleged,' can indicate nothing else than a complete cause of action for divorce for desertion, as above indicated. It follows as a logical result that, if the desertion took place in a foreign state, which state does not recognize desertion as a ground for divorce, even though such desertion in that state was willful, continuous, and obstinate, for two years, and the injured party came subsequently into this state and was a bona fide resident thereof, two years next preceding the commencement of the action, that desertion in the foreign state does not furnish a legal basis for a divorce under the law of this state."

The reasoning of the New Jersey Court appears to me to be sound and will be applied by me to the situation existing in the instant case.

The petitioner in support of her contention that a cause of action arose in this State within the meaning of subdivision (a) of said Section 3505, relies on *Doran v. Doran,* 1 *W. W. Harr.* (31 *Del.*) 568, 117 *A.* 24, 25. In that case, while the parties were residents of Ireland, the wife in April 1916, wilfully deserted her husband, the petitioner, and continued in such desertion down to the time of the commencement of the action for divorce. On July 14, 1919, the petitioner took up his residence in the City of Wilmington, in this County and State, where he continued to reside, at least, up to the time of the filing of his petition for divorce on February 10, 1922. Such a state of facts called for the application of the generally recognized rule that it is the right of the husband to establish the matrimonial domicile and to change it at will, and that it is the duty of the wife,

unless a just cause is shown to the contrary, to live with the husband at the matrimonial domicile, and at his request to go with him or to follow him to a new domicile if he should choose to select one. In the Doran case the question concerning the Court's jurisdiction arose under Section 3014 of the Revised Code of 1915 [3507 of the Revised Code of 1935]. This section provides the method of acquiring jurisdiction when the defendant cannot be served personally within the State and when at the time of the commencement of the action the plaintiff is a bona fide resident of this State. In other respects the language of the section is the same as the language of Section 3505, *supra*. In the case the Court said:

"Jurisdiction may be acquired under Section 3006 (*supra*) [3499 of the Revised Code of 1935] by the application of the legal principle of the continuity of the desertion. In this case it is not necessary to allege or prove desertion to be a cause of action in the jurisdiction in which the plaintiff lived at the time the desertion took place, but it is necessary, in order to give jurisdiction to the Courts of this State, to so draw the petition as to clearly and affirmatively show that a continuing act of wilful desertion took place within this State and has continued herein for at least two years next preceding the commencement of the action."

The Doran case differs materially from the instant case. There the charge was *actual desertion* as distinguished from *constructive desertion*. The cause of action under our law arose on July 14, 1919, that being the time when the petitioner established his domicile in this State. Thereafter he continued to be a bona fide resident of this State down to the time of the commencement of the action on February 10, 1922, during all of which time, it may be assumed from the report of the case, the wife wilfully absented herself, without just cause, from her husband's

domicile within this State. In the instant case the alleged misconduct of the husband which the petitioner contends culminated in constructive desertion by the husband, occurred while the parties were living together in Pennsylvania. In constructive desertion the pith of the charge is that the defendant has been guilty of conduct sufficient in law to justify the plaintiff in cessation from cohabitation. *Harrington v. Harrington,* 8 *W. W. Harr.* (38 *Del.*) 156, 189 *A.* 585. It is true that in the case before me the cessation of cohabitation continued for the statutory period, but it continued at the husband's domicile in Pennsylvania, at least until August, 1945, when the husband took up his residence in this State. I am unable to comprehend how it can be truly said that a cause arose at a time when either party was a bona fide resident of this State within the meaning of Section 3505(a), supra, in any case in which a wife, because of her husband's extreme cruelty is compelled to leave and remain away from her husband's domicile, when it is located outside of this State, even though the wife after the initial separation becomes and continues to be for the two years next preceding the commencement of an action, a bona fide resident of this State, and for that reason I am of the opinion that this Court is without jurisdiction to hear and determine this case under the provisions of said Section 3505(a).

██ Having reached the conclusion that this Court, under the evidence before it, has not the jurisdiction to enter a decree for divorce under subdivision (a) of Section 3505, consideration must now be given to the question whether there is jurisdiction under subdivision (b) of the section. The important question is whether constructive desertion is a ground for absolute divorce in the State of Pennsylvania. There is, however, a preliminary matter which requires attention. The petition charges a wilful desertion

in the State of Delaware. To warrant the entry of a decree in a case where the petitioner relies on a cause of action which arose in a jurisdiction outside of this State, the petition must clearly show that the cause of action arose in that jurisdiction. This the petition, in the instant case, has failed to do, but as no objection has been raised touching the sufficiency of the allegation in the petition, and because, on a timely application, an appropriate amendment would be allowed, consideration will be given to the question whether constructive desertion is a ground for absolute divorce in Pennsylvania.

The Pennsylvania divorce law provides, in Section 10 thereof, 23 P.S. § 10:

"* * * it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged, in the manner hereinafter provided, that the other spouse: * * *

"(d) Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years; * * *" and by Section 11 thereof, 23 P.S. § 11:

"* * * it shall be lawful for a wife to obtain a divorce, from bed and board, whenever it shall be judged * * * that her husband has:

"(a) Maliciously abandoned his family; or

"(b) Maliciously turned her out of doors; * * *."

The petitioner relies largely on *Howe v. Howe*, (1901) 16 *Pa.Super.* 193, in which Judge Orlady speaking for the Court, said:

"In cases like the present, when the wife is obliged by cruelty or violence of her husband to leave him for safety

and to avoid personal injury, her compulsory flight amounts to desertion by him. The burden of proof is upon her to show that her abandonment was not voluntary but that she was compelled to leave by his treatment or command: *Starkey v. Starkey,* 21 *N.J. Eq.* 135."

The Court cited cases from other jurisdictions to the same effect, but none from the State of Pennsylvania. The petitioner also directs attention to *Clark v. Clark,* (1915) 24 *Pa.Dist.* 475, and the Pennsylvania cases cited in 27 *C.J.S.,* Divorce, § 36, p. 567, note 30. In the Clark case the Court followed *Howe v. Howe.* The language of the cases in the cited note in *C. J. S.* support the text, but none go so far as to hold that where one spouse is compelled to leave the matrimonial domicile by reason of the extreme cruelty of the other spouse, that the innocent spouse can obtain an absolute divorce on the ground of desertion.

In the case of *Young v. Young,* (1942) 82 *Pa. Super.* 492, the Court fully considered the various statutes of Pennsylvania, between the years 1815 and 1895, relating to divorce. It said:

"The statute of March 13, 1915 gave to either married party the right to a divorce from the bonds of matrimony where the other party shall have committed 'wilful and malicious desertion and absence from the habitation of the other, without a reasonable cause, for and during the term and space of two years.'"

In speaking of the legislation in the years intervening between 1815 and 1895, it said:

"It nowhere appears that it was the legislative purpose to make cruel and barbarous treatment or indignities to the person the equivalent of desertion. The causes are entirely distinct and the evidence sustaining one is of a wholly

different nature from that necessary to establish the other."

In the Young case the libellant relied on *Howe v. Howe, supra,* and *Hirsch v. Hirsch,* 70 *Pa. Super,* 583. In the latter case, it seems to me, the conduct of the libelee fell far short of extreme cruelty, yet notwithstanding this, the decree entered in the court below was affirmed.

In the recent case of *Reno v. Reno,* (1943) 47 *Pa. Dist. & Co. R.* 551, there is the following language:

"Although it is said in *Hartner v. Hartner,* 75 *Pa. Super.* 342, at page 344, that constructive desertion is a term unknown in our law, some authorities apparently recognize it as a ground for divorce: *O'Keefe v. O'Keefe,* 69 *Pittsb. Leg. J.* 335; *Reber v. Reber,* 5 *Berks* 237; *Johnson v. Johnson,* 27 *Pa. Dist.* 1014. However, in order to constitute constructive desertion, the turning out of doors must be by actual violence or a reasonable apprehension of it: *Strang v. Strang,* 11 *Pa. Dist. & Co. R.* 300; *Border v. Border,* 21 *Pa. Dist.* 749."

And later in the same year, in the case of *Carl v. Carl,* (1943) 48 *Pa. Dist. & Co. R.* 459, Judge Rice, in a comprehensive opinion, reviews many of the Pennsylvania cases in connection with the prevailing statutory law of that State. He said, in part, 48 *Pa. Dist. & Co. R.* at page 462, *et seq.*:

"Section 10 of the Divorce Law of May 2, 1929, P. L. 1237, provides:

" 'When a marriage * * * shall hereafter be contracted and celebrated between two persons, it shall be lawful for the innocent and injured spouse to obtain a divorce from the bonds of matrimony, whenever it shall be judged * * * that the other spouse * * * (d) Shall have committed wilful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without reasonable cause, for and during the space of two years * * *'

"In *Ingersoll v. Ingersoll*, 49 *Pa.* 249, 251, 88 *Am. Dec.* 500, the Supreme Court said:

" 'Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other.'

"This statement of the law has been accepted and approved in many cases, two of the most recent ones being *In re Mallory's Estate*, 300 *Pa.* 217, 223, 150 *A.* 606, and *Wagner v. Wagner*, 121 *Pa. Super.* 413, 415, 183 *A.* 369.

"It is important to note that, in this statement of the law, it is said that 'desertion is an *actual abandonment*,' not that it is a *constructive* abandonment. * * * The statutory provision makes use of the words 'desertion' and 'absence' and each word has its proper place in the concept of desertion as a generic term. Desertion, in its initial stage, is a positive act, a leaving, a withdrawal, and absence is the consequence of the leaving or withdrawal. The words 'habitation of the injured or innocent spouse' designate the place from which the guilty spouse withdraws and absents himself, and the word 'habitation' refers to the place of abode, settled dwelling, residence, or house (Webster) of the deserted spouse in which she was actually living and abiding immediately prior to the withdrawal of the other spouse. When one spouse actually withdraws from the habitation of the other spouse, the idea that they had a common habitation is involved * * *. When one spouse withdraws from the common habitation without a reasonable cause and without the consent of the other spouse and absents himself or herself therefrom, with the intention then existing to abandon cohabitation, a wilful and malicious desertion begins, and when this desertion and absence continues for two years

a cause for absolute divorce is afforded the spouse who remained in the common habitation."

In the course of his opinion, Judge Rice, at page 467 of 48 Pa. Dist & Co. R., said:

"* * * it is very strange that Judge Orlady, [in *Howe v. Howe, supra*], should find it necessary to resort to the reports of cases in other States to find support for his doctrine. It is not logic and it is not statutory law that, when a wife leaves her husband's habitation on account of his cruelty, he becomes guilty of desertion; the one who leaves is the one who deserts, unless the leaving is with cause or consent. It is not true that, if the wife is not guilty of desertion, ergo the husband is. There are many cases where neither party is guilty of desertion."

Continuing, 48 Pa. Dist. & Co. R. at page 469, he said:

"Considering the doctrine of constructive desertion from another angle, it seems as if the courts have granted absolute divorces on the ground of desertion on facts which furnished cause for divorces from bed and board only, failing to make the proper distinction between the two remedies. Section 1 of the Act of February 26, 1817, 6 Sm.L. 405, provides:

" '* * * if any husband shall maliciously either abandon his family, or turn his wife out of doors * * * it shall be lawful for the Court of Common Pleas* * * * to grant the wife a divorce from bed and board * * *' ". Section 11 of The Divorce Law of May 2, 1929, P.L. 1237, provides:

" 'Upon complaint, and due proof thereof, it shall be proper for a wife to obtain a divorce from bed and board, whenever it shall be judged * * * that her husband has: (a) Maliciously abandoned his family: or, (b) Maliciously turned her out of doors; or * * *'. The Statutory Con-

struction Act of May 28, 1937, P.L. 1019, Sec. 51, 46 P.S. § 551, provides: 'Every law shall be construed, if possible, to give effect to all its provisions.'

"Section 62, 46 P.S. § 562, provides: 'Laws or parts of laws are in pari materia when they relate to the same persons or things or to the same class of persons or things' * * *. 'It may be said that these legal principles have always been in effect in Pennsylvania.' "

Upon applying the above mentioned rules of construction, Judge Rice reached the conclusion that "constructive desertion of a wife is the same as turning her out of doors and for it the only remedy of the wife is an application for a divorce from bed and board."

Near the conclusion of his opinion, Judge Rice stated that:

"Even if the doctrine of constructive desertion is valid, it would not apply in the pending case because libellant did not leave her husband's habitation by reason of his cruelty or threats or under dire compulsion, or because her personal safety required her to leave."

I have cited the Reno and Carl cases, and many others could have been included, and I have quoted at length from the opinion in the Carl case, in which there is some well considered dicta, not for the purpose of attempting to override any opinion of the Superior Court, or other appellate court of Pennsylvania, but for the purpose of illustrating the difficulty which confronts the nisi prius courts in that state, in attempting to reconcile the conflicting opinions of its Superior Court in regard to the subject under consideration.

Because of the inconsistent judicial expressions by the Superior Court, as to whether wilful desertion by construc-

tion of law, as we understand in Delaware, is a ground for divorce within the meaning of the Pennsylvania Statutes, I must accept as controlling either *Howe v. Howe, supra,* or *Young v. Young, supra.*

This situation is not unlike that which has arisen on numerous occasions under Section 721 of the Revised Statutes of the United States, 28 U.S.C.A. § 725, which provides:

"The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

In *Yoder v. Nu Enamel Corp.,* 117 *F.*2d 488, 489, in the Circuit Court of Appeals for the Eighth Circuit, it was said:

"In the application of a state statute, the federal courts are, of course, bound by the construction made by the courts of the state. * * * And the obligation to accept local interpretation extends not merely to definitive decisions, but to considered dicta as well * * *. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it. * * * Where co-ordinate decisions of a state court are conflicting, the most recent pronouncement must be accepted by the federal court as declaring the law of the state," citing *Mutual Life Ins. Co. of New York v. Cunningham,* (8 *Cir.*) 87 *F.* 2d 842; *Layne-Western Co. v. Buchanan County, Mo.* (8 *Cir.*) 85 *F.* 2d 343. See also *Dayton & M. R. Co. v. Commissioner In. Rev.,* (4 *Cir.*) 112 *F.* 2d 627.

The cases of *Howe v. Howe* and *Young v. Young,* were decided in 1901 and 1934, respectively. It is interesting to note that in 1920, in the case of *Hartner v.*

*Hartner,* 75 *Pa. Super.* 343, Judge. Orlady, who wrote the opinion in the Howe case, said: "But it is urged that this was a constructive desertion, *a term unknown to our law;*" (Italics supplied.) and that in the Young case Judges Orlady and W. D. Porter, who were two of the five judges that constituted the Superior Court when the Howe case was before it, and who concurred in the opinion, were also members of the said court when the Young case was decided, without dissent, by the seven judges who then constituted that court. The Howe and Young decisions, are coordinate decisions of an appellate court. As my attention has not been directed to any pertinent decision of the Pennsylvania Supreme Court, I can conceive of no better rule to follow than that adopted by the federal courts in those cases in which they are required to follow the rules of decisions of state courts. The Howe case was decided in 1901 and the Young case was decided about thirty-three years later. The latter case will be accepted as expressing the present state of the law in Pennsylvania, consequently I find that constructive desertion is not a ground for absolute divorce in Pennsylvania.

For the reason above stated, a decree nisi will be denied.